UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELSA FONTANEZ | : | |
| | : | |
| v. | : | C.A. No. 07-43ML |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on January 31, 2007 seeking to reverse the decision of the Commissioner. On August 10, 2007, Plaintiff filed a Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 8). On September 24, 2007, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 10). Plaintiff replied on October 12, 2007. (Document No. 12).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record and the legal memoranda filed by the parties, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be DENIED and that Plaintiff's

Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 8) be GRANTED.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on April 21, 2004, alleging disability since January 1, 2002. (Tr. 63-67). The application was denied initially (Tr. 31-32) and on reconsideration. (Tr. 33). Plaintiff requested an administrative hearing. On November 9, 2005, Administrative Law Judge Barbara F. Gibbs ("ALJ") held a hearing at which Plaintiff, represented by counsel, and assisted by an interpreter, and a vocational expert ("VE"), appeared and testified. (Tr. 453-490). The ALJ issued a decision on March 7, 2006 finding that Plaintiff was not under a "disability" as defined by the Act, at any time relevant to her decision. (Tr. 19-30). The Appeals Council denied Plaintiff's request for review on November 24, 2006, making the ALJ's decision the final decision of the Commission. (Tr. 5-7). A timely appeal was then filed with this Court.

**II. THE PARTIES' POSITIONS**

Plaintiff argues that (1) the ALJ committed numerous errors of law and fact in evaluating Plaintiff's mental illness; (2) the ALJ failed to appropriately apply the Treating Physician Rule to the expert medical opinion of a treating psychologist; and (3) the ALJ failed to appropriately evaluate Plaintiff's credibility.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's assessment of the severity of Plaintiff's mental impairments at Step 3 of the sequential evaluation process. The Commissioner also argues that the ALJ properly

evaluated opinion evidence from Plaintiff's treating psychologist. Finally, the Commissioner argues that the ALJ properly assessed Plaintiff's credibility.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there

is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was forty-three years old on the date of the ALJ's decision. (Tr. 19). Plaintiff has a high school education and is unable to communicate in English. (Tr. 70, 458-459). Plaintiff was employed "on and off" as a child-care provider from September 2001 to December 2003. (Tr. 71).

Medical records from Blackstone Valley Community Health Care, Inc., dated October 26, 2000 through June 12, 2001, indicate that Plaintiff was treated for migraines, asthma and obesity. (Ex. 2F). In April 2001, Plaintiff also reported experiencing back and right leg pain of several days in duration. (Tr. 172). However, in May 2001, Plaintiff expressed that her pain medications

provided some improvement. (Tr. 170). Records from Rhode Island Hospital dated July 13, 2001, reveal that Plaintiff continued to complain of back pain radiating to her right leg for which she was referred for physical therapy. (Tr. 316-318). However, records indicate that she went for three sessions and then failed to keep her appointments. (Tr. 312-313). On October 28, 2002, Plaintiff presented at Memorial Hospital with complaints of chest pain, headache and neck pain. However, all testing yielded normal results. (Tr. 355-357).

On March 23, 2004, Plaintiff underwent a bilateral medial rectus resection due to 3 diagnosed exotropia. (Tr. 239).[1] On October 6, 2004, Plaintiff was seen by Dr. Laurel Saunders-Bliss due to headaches and back pain. (Tr. 221). Dr. Bliss noted that Plaintiff was morbidly obese with a history of migraines and low back pain. Id. On exam Plaintiff displayed no pain to palpation and a positive straight leg raise on the right. Id. On November 1, 2004, Plaintiff described her pain as moderate. (Tr. 219). On November 16, 2004, an MRI of the Plaintiff's cervical spine revealed that she suffered from "mild degenerative disc disease." (Tr. 207). On December 27, 2004, Plaintiff expressed to her physical therapist that she was "feeling pretty good." (Tr. 201).

On June 30, 2004, Plaintiff was evaluated by Dr. Robert Paolella. (Tr. 384). On examination Plaintiff weighed 264 pounds and was 5'2" tall. Id. There was good range of motion in all segments of the spine. Id. Straight leg raising was positive on the right at 60 degrees and negative on the left at 80 degrees. Id. There was decreased range of motion in the right shoulder with elevation and positive tenderness. Id. Dr. Paolella opined that the Plaintiff experienced migraines twice a month and had fair blood pressure, so she could perform work-related bending, sitting, standing, walking, lifting and carrying. (Tr. 385). However, he suggested that before performing work activities, she

[1] Exotropia is a form of strabismus where the eyes deviate outward.

needed pulmonary function tests, imaging and evaluation of the lumbar and cervical spine and testing to evaluate the alleged numbness in her hands and feet. Id.

On January 21, 2005, a sleep study revealed that Plaintiff suffered from moderately severe obstructive sleep apnea syndrome, and weight loss and treatment with a CPAP machine was suggested. (Tr. 191, 192). Plaintiff's most recent eye examination since her surgery on March 23, 2004, dated September 20, 2005, revealed visual acuity of 20/200 in the right eye and 20/80 in the left. (Tr. 439). Records from Rhode Island Hospital note that Plaintiff was treated for a variety of health issues from August 2, 2005 to October 12, 2005. Ex. 11F. These records indicate that Plaintiff needed medication only once or twice a month for migraines. (Tr. 432). Dr. Walker noted that Plaintiff's asthma was well controlled (Tr. 433) and that she had "no issues" with depression. (Tr. 445).

In addition to her physical impairments, Plaintiff has had mental impairments as well. (Tr. 29, Finding 2). On July 31, 2004, Plaintiff presented to the Memorial Hospital Emergency Room with complaints of anxiety brought on by witnessing her son and his girlfriend arguing. (Tr. 325). It was subsequent to this panic attack that Plaintiff began treatment with Dr. Williams. (Tr. 395). Records dated August 16, 2004 through November 4, 2005 revealed treatment for anxiety. (Tr. 396-399, 410-412).

The ALJ determined that Plaintiff's degenerative disc disease, exotropia, migraines, depression and anxiety were "severe" impairments. (Tr. 29, Finding 2); 20 C.F.R. § 416.920(c). However, she concluded that Plaintiff's impairments were not of listing-level severity and that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. (Tr. 29, Findings 3 and 5). Based on testimony from the VE, the ALJ held that Plaintiff was not

disabled, as her RFC would permit Plaintiff to perform a significant number of unskilled light jobs. (Tr. 29-30 and Findings 11 and 12).

### A. The ALJ's Evaluation of Plaintiff's Mental Impairments is not Supported by Substantial Evidence.

Plaintiff's primary attack focuses on the ALJ's evaluation of her mental impairments of depression and anxiety. In evaluating Plaintiff's mental impairments, the ALJ was required to follow a "special technique" outlined in 20 C.F.R. § 416.920a. The ALJ did so (Tr. 24-25), and Plaintiff does not challenge this fact.

Rather, Plaintiff contends the ALJ made other legal and factual errors in her mental impairment evaluation. In particular, Plaintiff contends that the ALJ mischaracterized the evidence and violated the treating physician rule in rejecting Dr. Williams' opinions.

This case is unique in that there is a paucity of medical evidence regarding Plaintiff's mental impairments other than the treating psychologist's records and evaluations. Plaintiff presented at the Memorial Hospital Emergency Room on July 31, 2004 complaining of an anxiety or panic attack. (Tr. 321-328). Plaintiff indicates that she was a domestic abuse victim, and the attack was triggered by witnessing an abusive argument between her son and his girlfriend. (Tr. 323, 412). Subsequently, Plaintiff's primary care physician, Dr. Bliss, referred Plaintiff to Dr. Williams, a Psychologist, in reference to this incident. (Tr. 397). Plaintiff testified that she sees Dr. Williams on a bi-weekly basis. (Tr. 460-461). Dr. Williams diagnosed anxiety disorder, chronic post-traumatic stress disorder and depression. (Tr. 423). He opined that Plaintiff was unable to work due to her mental impairments (Tr. 396, 398 and 423) and, on November 9, 2005, rated Plaintiff's mental RFC as moderately severely and severely impaired. (Tr. 448-449).

The ALJ gave Dr. Williams' treating opinion "little weight" as it was "couched in broad, general terms that are not translated into a vocationally relevant, function-by-function assessment." (Tr. 27). The ALJ then stated it was "impossible" for her to determine the impact of Plaintiff's mental impairments on her ability to work. Id. Defendant concedes that the mental RFC form used by Dr. Williams "bears some resemblance to the form typically used by the Commissioner when evaluating mental limitations" (Document No. 10 at 14) and thus does not attempt to defend the ALJ's first reason for discounting Dr. Williams' assessment.

Instead, Defendant argues that this argument is moot because the ALJ otherwise properly rejected Dr. Williams' opinion pursuant to the treating physician rule. A treating physician is generally able to provide a detailed longitudinal picture of a patient's medical impairments, and an opinion from such a source is entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d). The amount of weight to which such an opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. See 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404-1527(d)(2).

The ALJ determined that Dr. Williams' opinion was not supported by his progress notes and contradicted by the opinion of Dr. Walker. As to Dr. Walker, an Internist, Plaintiff saw him on a few occasions in 2005. (Tr. 432-434, 444-445). It appears that these appointments were focused on Plaintiff's hypertension/blood pressure and diabetes. (Tr. 432, 444). For instance, the purpose of Plaintiff's October 12, 2005 appointment was for a follow-up of changes in blood pressure

medications. (Tr. 444). There is no indication that Plaintiff's mental health was reviewed other than a conclusory comment in one record that she had "no issues" with depression. (Tr. 445). The ALJ identified Dr. Walker as a "treating physician" and prominently identified his single comment regarding depression as a reason for rejecting Dr. Williams' opinion. It was inconsistent for the ALJ to give "little weight" to Dr. Williams' mental RFC assessment because it was "couched in broad, general terms" and then at the same time place significant weight on a single, unsupported reference in one of Dr. Walker's reports.

As to Dr. Williams' progress notes, the ALJ states that they indicate that Plaintiff's "mental status improved significantly from August 16 through September 17, 2004, when the notes cease." (Tr. 27). While the notes do not reflect further anxiety attacks, they do note the continued presence of depression and anxiety. (Tr. 399, 410-412). In addition, Dr. Williams prepared three psychological evaluations of Plaintiff (Tr. 395-396 (June 1, 2005); 397-398 (September 22, 2004); and 422-423 (October 26, 2005)) which indicate Plaintiff "continues experiencing her mental symptoms of major depression and anxiety." (Tr. 423). The ALJ selectively reviewed Dr. Williams' records.

Further, the ALJ concluded that elements of Dr. Williams' opinion were contradicted by Plaintiff's testimony. However, Defendant concedes that the ALJ "misstated the Plaintiff's testimony." (Document No. 10 at 10). For instance, the ALJ found that Plaintiff "is able to take her grandchildren to the park and to baseball games." (Tr. 25). However, Plaintiff actually testified that she had done these things "before," i.e., in the past, but is unable to do them currently due to anxiety. (Tr. 472-473). Also, the ALJ found that Plaintiff "cooks" (Tr. 25) but the record reflects that Plaintiff helped her daughter prepare meals by telling her what to do. (Tr. 468). Defendant contends

that these "minor discrepancies" are not material. However, they are misstatements of the record (presumably inadvertent) and they were prominent in the ALJ's analysis of Plaintiff's mental functioning.

Finally, the ALJ found that "no anti-depressants are prescribed for [Plaintiff]." (Tr. 27). However, there are repeated references in the record to Plaintiff taking Amitriptyline (brand name Elavil). (Tr. 198, 202, 205, 221, 228, 247, 323, 432-433, 442). This drug is used primarily to treat major depression. Dr. Williams diagnosed major depressive disorder and advised Plaintiff "to be compliant with her medications." (Tr. 396, 398, 423). While Elavil can also be prescribed for insomnia, there is no clear indication in the record that it was prescribed only for sleep. In fact, Plaintiff testified that she takes the drug more frequently, i.e., daily, "when [she]'s under depression." (Tr. 467).

Although Defendant obtained three physical RFC assessments from non-examining state agency physicians, a similar mental RFC assessment was not obtained. Further, the ALJ did not seek testimony from a medical expert at the hearing and did not otherwise seek to further develop the record on Plaintiff's mental impairments. Since the ALJ gave little weight to Dr. Williams' records and opinion, her evaluation of Plaintiff's mental RFC was necessarily based on lay opinion. While this may be appropriate in cases where "the extent of functional loss, and its effect on job performance, would be apparent even to a lay person," "an expert's RFC evaluation is ordinarily essential." Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). In fact, the ALJ indicated in this case that it was "impossible to determine what specific impact the mental impairments have on [Plaintiff's] ability to function in the workplace." (Tr. 27). Here, there is simply no substantial medical evidence of record supporting the ALJ's functional assessment of

Plaintiff's mental impairments. See Gordils v. Sec'y of Health and Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) ("ALJ is not qualified to assess residual functional capacity based on a bare medical record."). If the medical evidence shows relatively little impairment, "an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." Manso-Pizarro, 76 F.3d at 17. However, in this case, the medical evidence regarding Plaintiff's mental impairment was rejected by the ALJ, and thus, she necessarily based her assessment on a lay review of the evidence which, as noted above, included certain misinterpretations. The bottom line is that the ALJ's assessment of Plaintiff's mental impairment and RFC was based on a poorly developed record and is not supported by substantial evidence.

Accordingly, a remand is warranted to permit the ALJ to more fully develop the record and to correct the unsupported factual findings discussed above. While this may not change the ultimate result, it is not the role of this Court to further develop the record as to Plaintiff's mental impairments or to speculate as to whether or not the ALJ's conclusions would change with corrected factual findings and an expanded record. Because I find Plaintiff's primary argument to be persuasive and conclusive, it is unnecessary to consider Plaintiff's alternative arguments for remand. On remand, the ALJ shall correct the misinterpretations of the record discussed above, utilize a medical expert or other appropriate consultative vehicle to assess Dr. Williams' opinion and Plaintiff's mental RFC and then revisit the issue of disability based on the resulting record.

**VI. CONCLUSION**

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be DENIED and that the Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 8) be GRANTED. I further

recommend that the District Court enter Final Judgment in favor of Plaintiff reversing the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and remanding for additional proceedings consistent with this opinion.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 10, 2007